

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed March 14, 2013**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SADRUDDIN SHERALI | § | Case No. 12-34480-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |
| S & S FOOD CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | Adversary Proceeding No.12-03198-bjh |
| | § | |
| SADRUDDIN SHERALI, | § | |
| | § | |
| Defendant. | § | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Before the Court is the Complaint to Determine Debt Owed to Plaintiff and to Determine Dischargeability of Debts Owed to Plaintiff (11 U.S.C. § 523) (the "Complaint") filed by plaintiff S & S Food Corporation ("S&S") against the debtor Sadruddin Sherali ("Debtor" or "Sherali"). Sherali answered the Complaint on October 6, 2012. A Joint Pretrial Order was submitted by the parties and entered by the Court on February 11, 2013. The parties appeared at trial docket call on February 5, 2013 and announced ready for trial, which the Court set for February 13-14, 2013.

Thereafter, on February 6, 2013 counsel for Sherali filed a Motion for Leave to File Amended Answer. The Court set this motion for leave to amend for hearing at the outset of trial. S&S opposed the motion, arguing that (i) it had decided to drop certain of the claims initially pled in the Complaint based upon the issues preserved for trial by Sherali in the Joint Pretrial Order, (ii) it would be prejudiced by granting leave to amend under these circumstances, and (iii) Sherali's motion was untimely. Of significance, counsel for Sherali was unable to provide any legitimate reason for his delay in filing the motion or in raising an affirmative defense that should be considered any time a client is sued. The timing of the motion for leave to amend, along with the timing of a late-filed pretrial brief, which the Court had to direct Sherali's counsel to file at trial docket call and which was filed three days after docket call and less than three business days before trial was scheduled to commence, strongly suggests that the first time counsel considered whether S&S' claims were barred by the applicable statutes of limitations was when he prepared the pretrial brief. Given the late filing, the lack of a legitimate reason for the late filing, and the prejudice to S&S, the Court denied Sherali's motion for leave to amend.

Trial of the adversary commenced as scheduled on February 13, 2013 and concluded the next day. At the conclusion of trial, the Court requested the filing of post-trial briefs on certain issues not

addressed in the parties' pretrial briefs. After the submission of those post-trial briefs, the Court took the matter under advisement. After carefully considering the live pleadings and the evidence introduced at trial, along with the post-trial briefs, the Court is prepared to issue its findings of fact and conclusions of law, which are set forth below.[1]

## FINDINGS OF FACT

1.    Sherali is the debtor in Case No. 12-34480-bjh-7 pending in this Court.

2.    S&S was incorporated in Texas in 1988 and is a Texas for-profit corporation.

3.    S&S is a creditor of Sherali (holding an unliquidated claim as of the commencement of trial) and is the Plaintiff in this adversary proceeding.

4.    At all times from January 1, 2006 until December 9, 2011 (the "Relevant Period"), Sherali was the sole officer, director and shareholder of S&S. In his capacity as the sole officer, director and shareholder of S&S, Sherali exercised total control over S&S.

5.    As the sole officer and director of S&S during the Relevant Period, Sherali had a fiduciary duty to S&S.

6.    On December 9, 2011, Sherali ceased being an officer, employee, director and shareholder of S&S when Dominic W. Lam, Inc. was the high bidder at an auction of the stock of a reorganized S&S. The auction was conducted in connection with a hearing on confirmation of S&S' Second Amended Plan of Reorganization in its bankruptcy case pending before this Court as Case No. 11-32325-bjh-11. The Court confirmed S&S' plan of reorganization and Dominic W. Lam, Inc. became the sole shareholder of S&S when the plan became effective.

---

[1] The Court declines to address two claims preserved by S&S in the Joint Pretrial Order – *i.e.*, the money had and received claim and the constructive trust claim. Given the Court's rulings with respect to S&S' other claims, there is no need to address these claims.

7.      The Court heard the testimony of five witnesses at trial.  Jim Xu ("Xu"), a certified public accountant who was hired by Sherali and S&S to prepare, and who in fact prepared,  financial statements for S&S and tax returns for S&S and Sherali during the Relevant Period, testified credibly about the financial condition of S&S, his preparation of financial statements and tax returns, and how he was directed by Sherali to treat certain payments S&S made to Sherali during the Relevant Period.    Khalid Abdul Haq, a representative of S&S following confirmation of the S&S plan of reorganization and who has considerable experience in the gasoline/convenience store industry, testified credibly about the condition of S&S' assets, including the convenience store and laundromat, when he took over the day-to-day operation of those assets following confirmation of the S&S plan of reorganization.  Dominic Lam, the President of S&S following confirmation of the S&S plan of reorganization, also testified credibly about several matters including, most importantly, a detailed accounting of the cash sales of S&S from December 1-9, 2011, and monies that remained unaccounted for during that final period of operation of S&S by Sherali.  Gaddy Wells, S&S' counsel, testified credibly about the attorney's fees he incurred in prosecuting certain claims pled in the Complaint.  Finally, Sherali testified.  Unlike the other trial witnesses, Sherali was not a credible witness.  Much of his testimony was self-serving, which was to be expected.  However, much of his testimony was also either (i) contradicted by documentary evidence, (ii) contradicted by the testimony of more credible witnesses, or (iii) impeached on cross-examination.  He was evasive on cross examination, attempting to avoid difficult questions and only responding directly when forced to do so.  As a result, the Court discounts much of his testimony.

8.     S&S took no action to be governed by the Texas Business Organizations Code prior to its

effective date of January 1, 2010.

9.     Until January 1, 2010, S&S was governed by the Texas Business Corporation Act.

10.    Since January 1, 2010, S&S has been governed by the Texas Business Organizations Code.

11.    During the Relevant Period, Sherali, as the sole director of S&S, caused S&S to make the

following distributions (collectively, the "Distributions") to himself as the sole shareholder of

S&S:

| Calendar Year | Amount of Distribution to Sherali |
|---|---|
| 2006 | $199,299 |
| 2007 | $144,500 |
| 2008 | -0- |
| 2009 | $ 81,106 |
| 2010 | $155,951 |
| 2011 | $  89,500 |
| Total Distributions | $670,356 |

12.    While Sherali now wants this Court to find that the Distributions were really compensation

to him for services he rendered to S&S, that request is unsupported either factually or legally.

During the Relevant Period, neither Sherali nor S&S accounted for any part of the

Distributions as compensation to Sherali for services he rendered to S&S on S&S' financial

statements or tax returns.  Nor did Sherali account for the Distributions as compensation to

himself on his personal tax returns.   Rather, the Distributions were accounted for as

distributions to Sherali on account of his stock ownership in S&S.  In fact, Sherali elected to

take the monies as distributions on account of his stock ownership for tax reasons.  If the

monies had been paid to Sherali as compensation for services rendered to S&S, S&S would

have had to pay payroll taxes on the amounts paid, among other things, and Sherali would

have had substantially higher W-2 income to report and pay tax on to the United States Treasury. To avoid these burdens, Sherali made the decision to cause S&S to make the Distributions to himself on account of his status as the sole shareholder of S&S. Now that he has come to realize the ramifications of his actions, he wants the Court, without citing any legal authority, to recharacterize the payments as wages instead of stock distributions.

13.     The Court declines to do so here for at least three reasons. First, S&S, as the maker of the Distributions has not agreed to any such recharacterization. Second, it is simply too late for such a recharacterization to occur as S&S and its creditors would be prejudiced by such a recharacterization. If the Court recharacterized the five years of payments to Sherali as wages, S&S would have to file amended tax returns for each of those years and make the required tax payments on those amounts. S&S has commitments to its creditors under its confirmed plan of reorganization whose rights would be adversely impacted by imposing such an obligation on S&S now. Moreover, Sherali would have to amend his personal tax returns, giving rise to new claims by the IRS for unpaid taxes, together with penalties and interest no doubt. Finally, there is simply no legal or factual basis in the record to support such a request. Sherali caused S&S to make the Distributions to himself on account of his stock ownership and the Court will analyze the Distributions as such.

14.     Under the Texas Business Corporation Act, S&S was insolvent during the Relevant Period because it could not pay its debts as they became due in the ordinary course of business during that period. The credible evidence at trial established that S&S was not able to pay the amounts owing to at least two creditors during the Relevant Period – *i.e.*, debts owing to Zipco, Inc., a gasoline supplier, and to Wilshire State Bank, a secured creditor whose

collateral was not worth the amounts owing to it, at least during the course of S&S' most recent chapter 11 case.

15.     During the Relevant Period, the stated capital of S&S was only $1,000.

16.     During the Relevant Period, S&S had a negative net worth because its total liabilities exceeded its total assets.

17.     Under the Texas Business Corporation Act, now repealed, and the current Texas Business Organizations Code, a corporation's surplus is the amount by which the net assets of a corporation exceed the stated capital of the corporation.  During the Relevant Period, S&S had a negative surplus because it had negative net assets – *i.e.*, its total assets were less than its total liabilities.

18.     During the Relevant Period, despite S&S having a negative net worth and a negative surplus, Sherali caused S&S to make the Distributions to himself.  The Distributions were for Sherali's personal benefit and took from S&S cash that it could have used to pay creditors in the ordinary course of business.

19.     The Distributions that Sherali caused S&S to make to himself while S&S had a negative net worth and a negative surplus were not fair to S&S.

20.     The Distributions that Sherali caused S&S to make to himself while S&S was insolvent were not fair to S&S.

21.     During the Relevant Period, Sherali breached his fiduciary duty to S&S by causing S&S to make the Distributions to himself for his personal benefit to the detriment of S&S.

22.    Because Sherali caused S&S to make the Distributions to himself for his personal benefit during the Relevant Period, S&S was unable to pay its undisputed debt to Zipco, Inc. and Wilshire State Bank.

23.    As a result of Sherali causing S&S to make the Distributions to himself and S&S being unable to pay its debts as they accrued in the ordinary course of business, on or about May 6, 2008, S&S commenced a case under chapter 11 of the Bankruptcy Code in this Court (Case No. 08-32225-bjh-11).  That case was dismissed by an order entered on June 18, 2009 for S&S' failure to comply with 11 U.S.C. §§1121(e) and 1129(e).

24.    As a result of Sherali causing S&S to make the Distributions to himself and S&S being unable to pay its debts as they accrued in the ordinary course of business, on or about April 4, 2011, S&S commenced another case under chapter 11 of the Bankruptcy Code in this Court (Case No. 11-32325-bjh-11).  As found previously, a plan of reorganization was confirmed and consummated in that case, although the confirmation order is on appeal to the District Court. No stay of the Confirmation Order was sought or obtained by Sherali or any other party.

25.    From January 1, 2006 to January 1, 2010, all of the Distributions in the amount of $424,905 that Sherali caused S&S to make to himself were unlawful under Article 2.38 of the Texas Business Corporation Act because (i) S&S was insolvent during that period, and (ii) S&S had a negative surplus.

26.    Under Article 2.41 of the Texas Business Corporation Act, Sherali is liable to S&S for the amount of the unlawful Distributions of $424,905 that he consented to as the sole director of S&S in calendar years 2006, 2007, and 2009.

27. From January 1, 2010 to December 9, 2011, all of the Distributions in the amount of $245,451 that Sherali caused S&S to make to himself were unlawful under § 21.303(a) & (b) of the Texas Business Organizations Code because (i) S&S was insolvent during that period, and (ii) S&S had a negative surplus.

28. Under § 21.316(a) of the Texas Business Organizations Code, Sherali is liable to S&S for the amount of the unlawful distributions of $245,451 in calendar years 2010 and 2011 that he consented to as the sole director of S&S.

29. None of the Distributions that Sherali caused S&S to make to himself during the Relevant Period were permitted by the Texas Business Corporation Act Article 2.38 or by the Texas Business Organizations Code § 21.303.

30. None of the Distributions that Sherali caused S&S to make to himself during the Relevant Period were in S&S' best interests.

31. Sherali's conduct in causing S&S to make the unlawful Distributions to himself under the Texas Business Corporation Act and the Texas Business Organizations Code during the Relevant Period constituted a willful neglect of his fiduciary duties to S&S.

32. Sherali's conduct in causing S&S to make the unlawful Distributions to himself under the Texas Business Corporation Act and the Texas Business Organizations Code during the Relevant Period was not fair to S&S and constituted a breach of fiduciary duty.

33. Sherali is liable to S&S for $670,356 for consenting to and causing S&S to make the unlawful Distributions to himself in violation of the Texas Business Corporation Act and the Texas Business Organizations Code during the Relevant Period.

34.    Sherali is liable to S&S for $670,356 for breach of his fiduciary duty to S&S for causing S&S to make the unlawful Distributions for his personal benefit and to S&S' detriment.

35.    The purchase price of the 2003 Honda Element shown in the 2003 purchase contract was $23,249.40.

36.    From December 31, 2004 to the present, S&S has shown the 2003 Honda Element as an asset on its balance sheets.

37.    From December 31, 2004 to the present, S&S has shown depreciation of the 2003 Honda Element on its balance sheets.

38.    Sherali signed the schedules associated with the S&S 2008 bankruptcy case (Case No. 08-32225-bjh-11) under penalty of perjury.  Schedule B showed a Honda automobile as an asset of S&S.

39.    The operating statements signed by Sherali under penalty of perjury and filed in Case No. 08-32225-bjh-11 for each month from June 2008 through May 2009 show an automobile as an asset of S&S at a cost of $23,249.40.

40.    The operating statements signed by Sherali under penalty of perjury and filed in Case No. 11-32325-bjh-11 for each month from April 2011 through October 2011 show an automobile as an asset of S&S at a cost of $23,249.40.

41.    Since December 9, 2011, Sherali has wrongfully possessed and claimed ownership of the 2003 Honda Element that belongs to S&S as his own and has refused to return it to S&S.

42.    Sherali is estopped from claiming that the 2003 Honda Element is his after taking the position since 2004 that the vehicle is an asset of S&S.

43.    The net cash sales of S&S from December 1-9, 2011 were $79,207.16.

44. Sherali deposited $57,981.68 of the receipts of S&S' cash sales from December 1-9, 2011 in S&S' bank accounts.

45. On December 9, 2011, Sherali took all of the cash in S&S' convenience store and all of the cash in the money changers in S&S' laundromat.

46. Sherali failed to credibly account for and return $21,225.48 of S&S' net cash sales from December 1-9, 2011.

47. Sherali converted $21,225.48 of S&S' net cash sales from December 1-9, 2011.

48. Sherali converted S&S' 2003 Honda Element.

49. Sherali's conversion of S&S' property proximately caused damages to S&S in the amount of $24,000.

50. Sherali committed theft as defined in Texas Civil Practices and Remedies Code Chapter 134 by intentionally and unlawfully appropriating $21,225.48 of S&S' net cash sales from December 1-9, 2011 with the intent to deprive S&S of the cash and by intentionally and unlawfully appropriating S&S' 2003 Honda Element with the intent to deprive S&S of the vehicle.

51. Sherali's theft of S&S' property proximately caused damages to S&S in the amount of $24,000.

52. Sherali's conduct proximately caused total damages to S&S in the amount of $694,356.

53. Sherali was grossly negligent in causing S&S to make the unlawful Distributions to himself during the Relevant Period in breach of his fiduciary duty to S&S.

54. Given Sherali's conduct here, an award of exemplary damages to S&S in the amount of $500,000 is reasonable.

**Findings of Fact and Conclusions of Law**                                                      **Page 11**

55. S&S incurred $15,000 in attorney's fees in bringing its theft claims against Sherali. Those fees are reasonable and were necessarily incurred.

56. To the extent a finding of fact contains a conclusion of law, it shall also be considered a conclusion of law.

## CONCLUSIONS OF LAW

A. **Jurisdiction/Constitutional Authority**

1. In his answer, Sherali has objected to this Court's "jurisdiction" to hear and finally determine the issues raised in the Complaint, relying largely on the Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). For the reasons explained briefly below and explained fully in this Court's decision in *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293 (Bankr. N.D. Tex. 2011), which was recently affirmed by the District Court on appeal in *Carroll v. Farooqi*, No. 3:12-CV-804-L, 2013 WL 622224, at *1 (N.D. Tex. Feb. 19, 2013), this Court overrules Sherali's objection, concluding that it has the Constitutional authority to hear and finally determine the issues raised in this adversary proceeding.

2. As noted previously, this is an adversary proceeding to liquidate S&S' claims against Sherali and then to determine if those claims are excepted from Sherali's bankruptcy discharge under 11 U.S.C. § 523(a)(4).

3. From this Court's perspective, *Stern* does not implicate the grant of subject matter jurisdiction over bankruptcy cases and proceedings arising in the bankruptcy case, arising under the Bankruptcy Code (like this adversary) or related to the bankruptcy case under 28 U.S.C. § 1334. That subject matter jurisdiction is, and has been since 1984, vested in the United States District Court for the Northern District of Texas under 28 U.S.C. § 1334. Then, under

28 U.S.C. § 151, Congress granted bankruptcy courts the power to "exercise" certain "authority conferred" upon the district courts by Title 28, but bankruptcy courts were not granted their own independent subject matter jurisdiction over bankruptcy cases and proceedings. Congress also provided further procedures in 28 U.S.C. § 157 pursuant to which the district court may refer bankruptcy cases and proceedings to the bankruptcy courts for either final determination or proposed findings and conclusions. So, as relevant here, this Court exercises authority with respect to Sherali's underlying chapter 7 bankruptcy case and this adversary pursuant to a standing order of reference adopted in this District on August 3, 1984.

4.    From this Court's perspective, *Stern* simply clarified bankruptcy courts' constitutional power, not their subject matter jurisdiction. The Court in *Stern* discussed this critical distinction at length, 131 S. Ct. at 2606–08, and expressly clarified that 28 U.S.C. § 157 is not jurisdictional. *Id*. at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction."). So, while Sherali has couched his arguments as an attack on the subject matter jurisdiction of this Court, that argument is premised upon an inaccurate reading of *Stern*. The district court clearly has subject matter jurisdiction over this adversary. Nothing in *Stern* has changed that or challenged the propriety of that; rather, *Stern* specifically addresses the Constitutional authority of this Court, as an Article I tribunal, to hear and finally determine a debtor's common-law counterclaim to a proof of claim filed against the bankruptcy estate. Because this Court explained *Stern* in detail in its *Carroll* decision, that explanation will not be repeated here.

5.     With this background, this Court will address Sherali's arguments about its lack of "subject matter jurisdiction" or, as properly framed by this Court, its alleged Constitutional inability to hear and finally determine the claims asserted in this adversary.  Stated most simply, *Stern* does not implicate this Court's authority to hear and finally determine whether a creditor's claim is excepted from a debtor's discharge by 11 U.S.C. § 523(a)(4), even if the Court is required to first liquidate the creditor's claim in that process.  In analyzing this argument and the claims at issue in this adversary, the Court notes that there are two distinct issues. First, is a debt owed to S&S based upon the state law claims it asserts against Sherali?  Second, if a debt is owed, is that debt excepted from Sherali's discharge under 11 U.S.C. § 523(a)(4)?

6.     Taking the second issue first, there can be little doubt that this Court, as an Article I tribunal, has the Constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case.  Determining the scope of the debtor's discharge is a fundamental part of the bankruptcy process.  As noted by the court in *Sanders v. Muhs (In re Muhs)*, 2011 WL 3421546 (Bankr. S.D. Tex. Aug. 2, 2011), "[t]he Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including the 'exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.'" *Id*. at *1 (citing *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006)).  Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include, as relevant here, "determinations as to the dischargeability of particular debts."  28 U.S.C. § 157(b)(2)(I).  The Supreme Court has never held that

bankruptcy courts are without Constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. In fact, the Supreme Court's decision in *Stern* clearly implied that bankruptcy courts have such authority when it concluded that bankruptcy courts have the Constitutional authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process. *Stern*, 131 S. Ct. at 2618.

7. So, the question becomes, does the analysis of Constitutional authority change if the bankruptcy court must first liquidate the claim? For the reasons explained below, this Court concludes it does not, as it similarly concluded in *Carroll*.

8. First, under *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 593 (1985), a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. This is the so-called "public rights exception" discussed by the Supreme Court in *Stern*. There is no question that liquidating S&S' state law claims against Sherali is "closely integrated" into the Bankruptcy Code. *See In re Carroll, 464 B.R.* at 312; *see also In re Laughlin*, 09-35842-H4-07, 2012 WL 1014754, *8 (Bankr. S.D. Tex. Mar. 23, 2012) ("Determinations of whether a debtor meets the conditions for a discharge are integral to the bankruptcy scheme, and the Bankruptcy Court has the authority to make such determinations.").

9. Second, the Fifth Circuit has already determined that this Court has the authority to enter a judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case. In *In re Morrison*, 555 F.3d 473, 478-79 (5th Cir. 2009), the Fifth Circuit held that a bankruptcy court has the authority to liquidate a state law claim and enter a

monetary judgment against a debtor when deciding if that claim or judgment is non-dischargeable in a debtor's bankruptcy case. In deciding this question, the Fifth Circuit followed several other circuit courts that had concluded that bankruptcy courts had the power to enter a judgment in exactly this manner. *See, e.g., Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir. 1993); *Abramowitz v. Palmer*, 999 F.2d 1274, 1280 (8th Cir. 1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991). As the court in *Christian v. Kim (In re Kim)*, 2011 WL 2708985 at *2 (Bankr. W.D. Tex. July 11, 2011) noted: "[t]he defendant overreads [*Stern*] and its application to this proceeding. Even if the defendant were right, however, the court would be compelled to follow existing Fifth Circuit precedent as set out in *Morrison* ... as this court cannot ignore (much less 'overrule') existing binding circuit precedent, even if that precedent is thought to be inconsistent with a later decision by the Supreme Court. Only the circuit itself can overrule its own precedents." Like the *Kim* court, until the Fifth Circuit overrules *Morrison*, this Court will rely upon *Morrison* for its authority to liquidate S&S' state law claims against Sherali and enter a judgment on such claims.

10.     Finally, other courts have come to the same conclusion, *i.e.*, that *Stern* does not hold, directly or indirectly, that an Article I tribunal is without the Constitutional authority to liquidate a creditor's claim against a debtor through entry of a final dollar judgment and then determine whether that judgment is dischargeable in the debtor's bankruptcy case. *See, e.g., Pearson Education, Inc. v. Almgren*, 685 F.3d 691, 695 (8th Cir. 2012) (finding that a bankruptcy court can enter a money judgment in connection with a dischargeability action as it is "integral

to the restructuring of the debtor-creditor relationship" and that *Stern* does not dictate a different result); *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 23-24 (B.A.P. 9th Cir. 2012) (the court concluded that the holding of *Stern* was not irreconcilable with existing precedent that "a bankruptcy court may liquidate a debt and enter a final judgment in conjunction with finding the debt nondischargeable. . . . We hold that, even after Stern, the bankruptcy court had the constitutional authority to enter a final judgment determining both the amount of Fords' damage claims against Deitz, and determining that those claims were excepted from discharge."); *Dragisic v. Boricich (In re Boricich)*, 2011 WL 5579062 at *1 (Bankr. N.D. Ill. Nov. 15, 2011) ("*Stern* left intact the authority of a bankruptcy judge to fully adjudge a creditor's claim.  In this case, the claim was an adversary proceeding against debtor to bar dischargeability of a debt due to Plaintiff.  Therefore, the authority to enter a final dollar judgment as part of the adjudication of nondischargeability, as recognized in *Hallahan*,[2] was not impaired by *Stern* ").

11.    For all of these reasons, this Court concludes that it has the Constitutional authority to (i) liquidate S&S' state law claims against Sherali through the entry of a money judgment following trial, and (ii) determine whether that judgment is nondischargeable in Sherali's chapter 7 bankruptcy case.

**B.    Burden of Proof**

12.    S&S bears the burden of proving, by a preponderance of the evidence, that the debts at issue are excepted from Sherali's discharge under 11 U.S.C. § 523(a)(4).  *Grogan v. Garner*, 498

---

[2] Like the Fifth Circuit held in *Morrison*, the Seventh Circuit held in *Hallahan* that a bankruptcy court could enter a final dollar judgment against a debtor as part of a nondischargeability action.

U.S. 279, 291 (1991); *In re Acosta*, 406 F.3d 367, 371 (5th Cir. 2005). Exceptions to discharge are to be strictly construed against the moving creditor, here S&S, and liberally construed in favor of the debtor Sherali. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011); *Hudson v. Raggio & Raggio, Inc., (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

**C    The Distributions Were Not Permitted By Texas Corporation Law**

13. The Texas Business Corporation Act was the law governing the corporate affairs of S&S and Sherali as its director until January 1, 2010. Tex. Bus. Orgs. Code Ann. § 402.005(a).

14. From January 1, 2006 until January 1, 2010, S&S could not legally make distributions to Sherali as a shareholder if (i) the distribution caused S&S to be insolvent, as defined by the Texas Business Corporation Act, or (ii) if the amount of the distribution exceeded the distribution limit of the amount of the surplus of S&S. Tex. Bus. Corp. Act Art. 2.38

15. Under the Texas Business Corporation Act "'[i]nsolvency' means inability of a corporation to pay its debts as they become due in the usual course of its business." Tex. Bus. Corp. Act Art. 1.02(16).

16. Under the Texas Business Corporation Act, "'[s]urplus' means the excess of the net assets of a corporation over its stated capital." Tex. Bus. Corp. Act Art. 1.02(27).

17. In addition to any other liabilities imposed by law upon directors of a corporation, Sherali is liable to S&S for the amounts that he consented to and caused S&S to distribute to himself from January 1, 2006 until January 1, 2010 since all such distributions (i) exceed the surplus

of S&S during that period, which was always a negative amount, and (ii) were made while S&S was insolvent or caused S&S to become insolvent.[3]  Tex. Bus. Corp. Act Art. 2.41.

18.     Since S&S was formed before January 1, 2006 and took no action to elect to adopt the Texas Business Organizations Code, from and after January 1, 2010, the Texas Business Organizations Code applied to S&S and to Sherali for all actions taken as the managerial officials, owners, or members of the entity, except as otherwise expressly provided by Title 8 of the Code.  Tex. Bus. Orgs. Code Ann. § 402.005(a).

19.     "Insolvent" under the Texas Business Organizations Code means a person who is unable to pay the person's debts as they become due in the usual course of business or affairs.  Tex. Bus. Orgs. Code Ann. § 1.002(40).

20.     "Surplus" under the Texas Business Organizations Code means the amount by which the net assets of a corporation exceed the stated capital of the corporation.  Tex. Bus. Orgs. Code Ann. § 21.002(12).

21.     From January 1, 2010 to the present, S&S could not legally make distributions to Sherali as a shareholder if (i) the distribution caused S&S to be insolvent, as defined by the Texas Business Organizations Code, or (ii) if the amount of the distribution exceeded the distribution limit of the amount of the surplus of S&S, also as defined by the Texas Business Organizations Code.  Tex. Bus. Orgs. Code Ann. § 21.303(a) & (b).

---

[3]Sherali argues in his post-trial brief, without citation to any legal authority, that S&S was not insolvent as defined by the applicable statute because S&S must not have been able to pay its *debts* as they become due and the debts to Zipco, Inc. and Wilshire Bank were insufficient as a matter of law.  While "debts" certainly suggests at least two unpaid creditors are required, the evidence here satisfies the literal language of the statute.  Moreover, even if Sherali is correct, it doesn't change the outcome here, because the Distributions made exceeded the surplus of S&S during the Relevant Period.  On that basis alone, the Distributions were unlawful.

22. Sherali is liable to S&S for the amounts that he caused S&S to distribute to himself from January 1, 2010 to the present since all such distributions (i) exceeded the surplus of S&S, which was always a negative amount, on the date of the distributions, and/or (ii) were made when S&S was insolvent, or caused S&S to become insolvent. Tex. Bus. Orgs. Code Ann. § 21.316(a).

**D.      Conversion and Theft of S&S Property**

23. Under Texas law, conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971).

24. Sherali' taking of the net cash sales of S&S from December 1-9, 2011, which he failed to account for, constitutes conversion.

25. Sherali's taking of the 2003 Honda Element constitutes conversion.

26. A person who converts property is liable to the property's owner for damages. *See Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 651 (5th Cir. 1991).

27. Under the Texas civil theft statute, "theft" means unlawfully appropriating property or unlawfully obtaining services as described by Sections 31.03, 31.04, 31.05, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14 of the Penal Code. Tex. Civ. Prac. & Rem. Code § 134.002(2).

28. A person commits an offense if he unlawfully appropriates property with the intent to deprive the owner of that property. Tex. Penal Code § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. Tex. Penal Code § 31.03(a).

29. A person who commits theft is liable for the damages resulting from the theft. Tex. Civ. Prac. & Rem. Code § 134.003(a). Moreover, a person who has sustained damages resulting from a theft may also recover from the person who commits the theft statutory damages of up to $1,000. *Id*. at § 134.005(a)(1). Finally, "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." *Id*. at § 134.005(b). The award of attorney's fees under this section to the prevailing party is mandatory. *Corral-Lerma v. Border Menolition & Environmental, Inc.*, No. 08-11-00134-CV, 2012 WL 1943763, at *1 (Tex. App.—El Paso 2012).

30. Sherali committed theft as defined in the Texas Civil Practices and Remedies Code by (i) intentionally and unlawfully appropriating $21,225.48 of S&S' net cash sales from December 1-9, 2011 with the intent to deprive S&S of the cash, and (ii) intentionally and unlawfully appropriating S&S' 2003 Honda Element with the intent to deprive S&S of the vehicle.

**D.      Liquidation of S&S' Claim against Sherali**

31. Sherali is liable to S&S for $670,356 for consenting to and causing S&S to make the unlawful Distributions to himself in violation of  the Texas Business Corporation Act and the Texas Business Organizations Code during the Relevant Period.

32. Sherali is liable to S&S for $670,356 for breach of his fiduciary duty to S&S for causing S&S to make the unlawful Distributions for his personal benefit and to S&S' detriment.

33. Sherali is liable to S&S for the $21,225.48 of S&S' net cash sales from December 1-9, 2011 that he converted.

34. Sherali is liable to S&S for the value of the 2003 Honda Element that he converted.

35.    Sherali's conversion of S&S' property proximately caused damages to S&S in the amount of $24,000.

36.    Sherali is liable to S&S for his theft of $21,225.48 of S&S' net cash sales from December 1-9, 2011 and for his intentional and unlawful appropriation of S&S' 2003 Honda Element with the intent to deprive S&S of the vehicle.

37.    Sherali's theft of S&S' property proximately caused damages to S&S in the amount of $24,000.

38.    Sherali's conduct proximately caused actual damages to S&S totaling $694,356.

39.    S&S is entitled to recover its reasonable and necessary attorney's fees in bringing the theft claim against Sherali in the amount of $15,000.

40.    Under Texas law, exemplary damages are those awarded as a penalty or by way of punishment but not for compensatory purposes.  Tex. Civ. Prac. & Rem. Code § 41.001(5).

41.    Sherali's intentional breach of fiduciary duty is a tort for which S&S may recover exemplary damages.  *Lesikar v. Rappeport*, 33 S.W.3d 282, 310 (Tex. App.—Texarkana 2000, pets. denied).  Where, as here, a fiduciary gains a benefit by breaching his fiduciary duty, willful and fraudulent acts may be presumed.  *Id*.  An intentional breach may be found where the fiduciary intends to gain an additional benefit for himself.  *Id*.

42.    Moreover, a finding of conversion that was either malicious or willfully done gives rise to a recovery of exemplary damages.  Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a); *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).  Malice may be proven by circumstantial evidence. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Malice may be implied from the conversion of another's property when the defendant knew

or should have known he had no legal right to the property. *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 447–48 (Tex. App.—Texarkana 2006, no pet.).

43.     Based on these precedents, S&S is entitled to recover exemplary damages for Sherali's conduct in the amount of $500,000. The United State Supreme Court has established three factors to be considered in granting exemplary damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). Although courts do not use a strict mathematical rule in calculating exemplary damages, typically such damages will not exceed a 4:1 ratio of exemplary to actual damages. *Bennett v. Reynolds*, 315 S.W.3d 867, 873 (Tex. 2010). In this case, the Court finds that the award of exemplary damages is appropriate in this case and that the ratio of $500,000 in exemplary damages to $694,356 of actual damages is reasonable.

**E.      Nondischargeability of the Debt owed to S&S under 11 U.S.C. § 523(a)(4)**

44.     11 U.S.C. § 523(a)(4) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

**F.      Defalcation While Acting in a Fiduciary Capacity Under 11 U.S.C. § 523(a)(4)**

45.      Under Texas law, corporate officers and directors owe fiduciary duties to the corporations they serve and must not allow their personal interests to prevail over the interests of the corporation. *In re Harwood*, 637 F.3d at 620.

46.      A corporate officer is a fiduciary of a corporation within the meaning of 11 U.S.C. § 523(a)(4). *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1335-41 (5th Cir. 1980) (officer of a corporation owed common law fiduciary duty to corporation and stockholders sufficient to satisfy requirements of § 523(a)(4)); *In re Jackson*, 141 B.R. 909, 915 (Bankr. N.D. Tex. 1992).

47.      Under Texas law, an officer or director of a corporation owes a fiduciary duty to the corporation. *In re Jackson*, 141 B.R. at 915 (citing *Faour v. Faour*, 789 S.W.2d 620 (Tex. App.—Texarkana 1990, writ denied).

*48.*      Under Texas law, a corporate officer or director owes a duty to the corporation to act only in the corporation's best interests. *Id.* (citing *Hughes v. Houston Nw. Med. Ctr., Inc.*, 680 S.W.2d 838, 843 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

49.      Any transactions between the officers or directors and the corporation are subject to strict scrutiny. *Id.* at 916.

50.      The burden is on the officer or director to establish the fairness of the transaction between him and the corporation. *Id.* (citing *Henger v. Sale*, 357 S.W.2d 774, 778 (Tex. App.—Waco 1962, aff'd in part, rev'd in part on other grounds, 365 S.W.2d 335 (Tex. 1963)).

51.      When a corporate officer or director diverts assets of the corporation to his own use, he breaches his fiduciary duty of loyalty to the corporation, and the transaction is presumptively

fraudulent. *Roth v. Mims*, 298 B.R. 272, 287 n.2 (N.D. Tex. 2003) (citing *GNG Gas Systems, Inc. v. Dean*, 921 S.W.2d 421, 427 (Tex. App.—Amarillo 1996, writ denied).

52. Any misappropriation of corporate property by a corporate officer or director is a fiduciary defalcation within the meaning of § 523(a)(4). *In re Jackson*, 141 B.R. at 918-19 (citing inter alia *John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir. 1970).

53. Under Texas law, Sherali, as a director of S&S, was conclusively presumed to know S&S' condition, its business, its receipts and expenditures and all the general facts which go to make up that condition and business, as shown by the entries on its regular books. *Merchs.' & Mfrs.' Sec. Co. v. Wright*, 59 S.W.2d 1097, 1098 (Tex. Civ. App.—Amarillo 1933, writ refused).

54. "A director of a corporation, actively engaged in the conduct of its business, and to whom the books are open and accessible for inspection at all times, is chargeable with the facts that the books disclose." *McLendon Hardware Co. v. Black*, 264 S.W. 1011, 1013 (Tex. App.—Austin 1924, no writ).

55. As the sole officer and director of S&S during the Relevant Period, Sherali had a fiduciary duty to S&S.

56. Sherali is presumed to have known that S&S had a negative net worth and negative surplus during the Relevant Period.

57. All persons are presumed to know the law and are charged with knowledge of provisions of statutes. *N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n. 3 (Tex. 1990).

58. Thus, Sherali is presumed to have known of the prohibition under Texas law of a corporation making distributions to its shareholders (i) in amounts that exceed the corporation's surplus, or (ii) when insolvent or which cause the corporation to become insolvent.

59. "'Defalcation' for the purposes of 11 U.S.C. § 523(a)(4) 'is a willful neglect of duty, even if not accompanied by fraud or embezzlement.'" *In re Harwood*, 637 F.3d at 624 (citation omitted).

60. "Willful neglect 'does not require actual intent, as does fraud,' and is 'essentially a recklessness standard.'" *Id. (citation omitted)*. "Willfulness in this context 'is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known.'" *Id*. (citation omitted).

61. The Distributions that Sherali wrongfully caused S&S to make to himself during the Relevant Period constitute a willful neglect of his fiduciary duty as an officer and director of S&S that constitute "defalcations" for the purposes of 11 U.S.C. § 523(a)(4). This is so because Sherali is presumed to have known that the Distributions were unlawful under the applicable Texas corporation statutes because S&S had a negative surplus and/or was insolvent during the Relevant Period.

62. Sherali's breach of fiduciary duty as an officer and director of S&S renders his debt arising from self-dealing transactions non-dischargeable under 11 U.S.C.§ 523(a)(4). *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 421 (5th Cir. 1990).

63. Sherali's actions in causing S&S to make the unlawful Distributions to himself during the Relevant Period constitute defalcation of his fiduciary duty as an officer and director of S&S

and render his debt to S&S in the amount of $670,356 non-dischargeable under 11 U.S.C. § 523(a)(4). *Id.*

**G.      Larceny Under § 523(a)(4)**

64.    For purposes of 11 U.S.C. § 523(a)(4), "larceny" means the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner. *Smith v. Williams (In re Smith)*, 253 F.3d 703, 2001 WL 498662, *2 (5th Cir. 2001) (unpublished); *In re Barrett*, 156 B.R. 529, 533 n.3 (Bankr. N.D. Tex. 1993).

65.    A finding of violation of a civil theft statute satisfies the requirements for nondischargeability under 11 U.S.C. § 523(a)(4). *In re Smith*, 2001 WL 498662 at *2. (citing *In re Padgett*, 235 B.R. 660, 663 (Bankr. M.D. Fla. 1999) (holding that a court finding of liability under Florida civil theft statutes satisfies the requirements of 11 U.S.C. § 523(a)(4)).

66.    As noted previously, under the Texas civil theft statute, "theft" means unlawfully appropriating property or unlawfully obtaining services as described by Sections 31.03, 31.04, 31.05, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14 of the Penal Code. Tex. Civ. Prac. & Rem. Code Ann. § 134.002(2). A person commits an offense if he unlawfully appropriates property with the intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. Tex. Penal Code Ann. § 31.03(a).

67.    Sherali's actions in converting and appropriating S&S' cash and 2003 Honda Element without S&S' consent constitute larceny under the Bankruptcy Code and render his debt to S&S in

the amount of $24,000 non-dischargeable under 11 U.S.C. § 523(a)(4). *In re Smith*, 2001 WL 498662 at *2.

**G.     Attorneys Fees and Exemplary Damages are also Non-Dischargeable**

68.     Attorneys fees and exemplary damages are also non-dischargeable.  In *Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996), the Fifth Circuit held that "[w]hen the primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable.  *Stokes v. Ferris (In re Stokes)*, 150 B.R. 388, 393 (W.D. Tex. 1992) (holding all debts awarded by a Texas court, including punitive damages, legal fees, and post-judgment interest, to be nondischargeable), *aff'd*, 995 F.2d 76 (5th Cir.1993)."  Further, the Supreme Court has stated that "the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that any debt ... for money, property, services, or . . . credit, to the extent obtained by . . . fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).  Applying these binding precedents, this Court finds that the attorneys fees and exemplary damages awarded in this case are non-dischargeable.

69.     To the extent a conclusion of law contains a finding of fact, it shall also be considered a finding of fact.

Based upon the foregoing findings of fact and conclusions of law, S&S is entitled to a judgment against Sherali for actual damages of $694,356, exemplary damages of $500,000, and attorney's fees of $15,000.  These amounts are excepted from Sherali's discharge under 11 U.S.C. § 523(a)(4).

A judgment consistent with these findings of fact and conclusions of law will be entered separately.

### ### End of Document ###